RECEIVED
IN LAKE CHARLES, LA.
MAY -3 2013
TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:10 CR 00074-001 |
| VS. | : | JUDGE MINALDI |
| JUAN MANUEL DAVILA-MARTINEZ | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Presently before the court is the defendant's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence [doc. 44]. The Government filed an answer [doc. 50]. The defendant did not file a Reply.

PROCEDURAL HISTORY

The defendant entered a guilty plea to a one count indictment charging him with reentry following deportation in violation of 8 U.S.C. § 1326(a) (Doc. 9). The court sentenced him to 60 months imprisonment, a departure from his guidelines range of 15 – 21 months.

The defendant appealed claiming that the district court's explanation for the upward departure was inadequate and that the court's finding that his criminal history category under-represented his criminal history was erroneous. The Fifth Circuit rejected his assertion in an unpublished decision at 464 Fed. Appx. 247 (5th Cir. 2012). The Fifth Circuit opinion was filed on February 22, 2012 and this motion filed February 8, 2013 is timely filed. Defendant has not applied for writ of certiorari.

FACTS

The factual basis states:

On February 3, 2010, the defendant, Juan Manuel Davila -Martinez, was arrested by the United States Border Patrol in Lake Charles, Louisiana for illegal re-entry after deportation. On February 3, 2010, Davila-Martinez was driving a red Dodge Intrepid westbound on Interstate 10, when he was pulled over by U.S. Border Patrol. He was pulled over because the Border Patrol agents noticed that he sank low in his seat when he passed their location. In addition, they observed that the vehicle had a Texas license plate on it, but lacked any Texas inspection sticker or registration sticker in the front windshield. After he was pulled over, Davila-Martinez presented to the agents a Mexican Martricula Consular and Mexico registration card in the name of Miguel Guillen-Ramirez. He then told the agents that he was a citizen and national of Mexico. He further stated that he did not have any immigration documents which would allow him to be or to remain in the United States legally.

A records check revealed that he was Juan Manuel Davila-Martinez and also reflected that he had been granted a voluntary departure on May 26, 2000. He was also ordered to be removed by an immigration judge on January 24, 2003 but was later arrested on February 1, 2003 and charged and convicted of 8 U.S.C. § 1326(a). He was sentenced to 15 months imprisonment and was deported via El Paso, Texas on March 5, 2004.

Davila-Martinez further told the agents that he illegally re-entered the United States near Otay Mesa, California on November 30, 2009. The defendant has never requested, nor has he even been granted permission from the Attorney General of the United States of the Secretary of Homeland Security to re-apply for admission back into the United States.

Law and Analysis

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992).

"A 'collateral challenge may not do service for an appeal.' " *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir.1991) (en banc). A defendant who raises a constitutional or jurisdictional issue for

the first time on collateral review must show "both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Shaid,* 937 F.2d at 232. The 28 U.S.C. § 2255 cause and actual prejudice standard presents a significantly higher hurdle than the plain error standard of review that is applied on direct appeal. *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.1992). The only exception to the cause and prejudice test is the "extraordinary case ... in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* Davila has not asserted actual innocence.

The defendant raises two arguments:

1) He asks the court to dismiss the indictment claiming that he was sentenced above the statutory maximum for the offense; and

2) He argues that this court imposed a substantively unreasonable sentence by double counting his prior conviction. He asserts that the sentence is greater than necessary to effectuate Sect. 3553's purposes.

Argument One

Davila argues that this court should dismiss the indictment or remand for a "proper arraignment"[1] with the correct statutory maximum because the indictment did not charge constitutionally permissible enhancement facts., i.e. the indictment failed to allege a prior felony conviction. He argues that the ten year statutory maximum sentence reported at the arraignment is constitutionally barred because the prior deportation was not adjudicated before a jury and because the enhancement was not alleged in the indictment.

The defendant argues that 8 U.S.C. §1325 describes a misdemeanor offense for reentry and

---

[1] Defendant's brief, p.6, 1.5.

that to convert this misdemeanor to a felony, the government must prove additional enhancement facts including the fact of prior deportation. Davila cites *United States v. Mendoza-Lopez*, 481 U.S. 828, 838-839 (1987) in support of his argument. In *Mendoza–Lopez* the Supreme Court established that an alien who is being prosecuted under § 1326 for illegal reentry following deportation may, in certain circumstances, collaterally attack the legality of the prior deportation. 481 U.S. at 839, 107 S.Ct. at 2156. The Supreme Court held that, where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceedings. *Id.* at 837–38, 107 S.Ct. at 2155. Because the government had conceded that the defects in the underlying proceeding at issue in *Mendoza–Lopez* rendered the deportation fundamentally unfair, the Court accepted that the deportation hearing violated the respondents' due process rights. *Id.* at 839–40, 107 S.Ct. at 2156. Despite this concession, the Court nevertheless required the violation of the respondents' rights to amount to a complete deprivation of judicial review of the deportation determination before the determination could be collaterally attacked. *Id; United States v. Lopez-Solis* L 216061, 2 -4 ( 11th Cir.2013).

The Supreme Court determined that the violation of the respondents' rights amounted to a complete deprivation of judicial review of the deportation proceedings because the respondents' waivers of their rights to appeal were not considered or intelligent. *Id.* at 840, 107 S.Ct. at 2156. The Supreme Court, however, did not determine that the waivers were unconsidered and unintelligent on the sole basis that the Immigration Judge ("IJ") had failed to fully explain the respondents' rights to appeal their deportation orders to a federal court. *See id.* at 839–42, 107 S.Ct. at 2156–57. Rather, the Court mentioned the district court's finding that the IJ had failed to explain adequately the

4

respondents' rights concerning suspension of deportation, a discretionary remedy that provided relief from deportation, and finding that the respondents had a lack of understanding about the proceedings. *Id.* at 831–32, n. 3, 107 S.Ct. at 2151–52, n. 3. The Supreme Court determined that the respondents were deprived of any basis to appeal, as the only relief for which they would have been eligible was not adequately explained to them. *Id.* at 839–40, 842, 107 S.Ct. at 2156–57. Thus, the Supreme Court concluded that the respondents' waivers of their right to appeal were unconsidered and unintelligent in large part because they did not understand that they were eligible to apply for suspension of deportation. *Id.*

Following *Mendoza–Lopez,* Congress amended §1326 by adding subsection (d), which provides that an alien charged with violating § 1326 may not challenge the validity of the underlying deportation order unless the alien can demonstrate that: (1) the alien exhausted any administrative remedies that may have been available to challenge the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, § 441(a), 110 Stat. 1214 (1996). Davila-Martinez has not proven any of these elements.

Furthermore, *Mendoza-Lopez* can be distinguished from the case at bar. The government in the case at bar did not concede that the prior proceedings were in any way deficient. Additionally, this case has been superceded by statute, as noted above. *Mendoza-Lopez* did not address the use of a prior conviction to enhance a defendant's sentence.

Davila-Martinez also cites *United States v. Tigue*, 266 F.3d 1187 (9th Cir. 2001) in support

5

of his position. In *Tigue*, the defendant was convicted, on a guilty plea, of bank robbery, of being a felon in possession of a firearm, and of interstate transportation of a stolen vehicle. He appealed and the Ninth Circuit held that the sentencing judge's use of defendant's prior, nonjury juvenile adjudication to increase the statutorily mandated maximum punishment to which he was exposed violated due process. Tigue argued that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) required that the fact of his juvenile adjudication be charged in an indictment and found by a jury beyond a reasonable doubt. *Id.* at 1191.

The court in *Tigue* held that the Constitution does not require prior convictions that increase a statutory penalty to be charged in the indictment and proved before a jury beyond a reasonable doubt. *United States v. Pacheco–Zepeda*, 234 F.3d 411, 413–14 (9th Cir.2001) ("The district court was entitled to consider any prior aggravated felony convictions in sentencing Pacheco–Zepeda for illegal reentry even though such conduct had not been charged in the indictment, presented to a jury, and proved beyond a reasonable doubt."); *see also Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 ("*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); *Almendarez–Torres v. United States*, 523 U.S. 224, 243–44, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

There is a difference between conviction at trial and conviction by guilty plea. When the defendant entered a guilty plea to the offense charged in the indictment, he admitted every element necessary for conviction of that offense and for sentencing under Section 1326(b)(1). The indictment charged each element necessary for conviction: that defendant is an alien; he has previously been

removed from the United States; that he had not obtained the express consent of either the Attorney General or the Secretary of Homeland Security to reapply; and yet he was found in the United States (Doc. 9). This court explained each element of the offense to the defendant and he acknowledged each element when he signed his plea agreement.

Because this is the first time Davila-Martinez raises this issue he must overcome the procedural bar and establish both "cause" and "prejudice" for his failure to raise the issue on direct appeal. He has failed to demonstrate any "cause" for failure to raise the issue. The defendant has shown no error at all or that the failure resulted in prejudice. Therefore, his indictment is not subject to dismissal for any defect.

The defendant's additional claim that the government must prove additional enhancement facts to convert the misdemeanor provided in 8 U.S.C. § 1325(a) to a felony under Section 1326(a) or (b) is incorrect. The indictment charges Davila-Martinez with all the elements of the felony offense under Section 1326. He admitted the enhancement facts at his guilty plea and has failed to demonstrate that his guilty plea was in any way involuntary or coerced.

The defendant has failed to establish any error. He has failed to prove cause and prejudice for his failure to raise this issue on direct appeal.

Argument Two

The second issue raised by Davila-Martinez is his argument that this court abused its sentencing discretion by using a sentence that is substantively unreasonable. He asserts that this court erred by failing to acknowledge its own authority to vary based on the unwarranted sentencing disparity caused by the availability of "fast track" in the Western District of Louisiana. At the time

this defendant was sentenced, the Western District of Louisiana did not have a fast-track program.

The Fifth Circuit has held that a district court is not required "to factor in, when sentencing a defendant, the sentencing disparity caused by early disposition programs" to prevent a sentence from being unreasonable. *United States v. Gomez-Herrera*, 523 F.3d 554, 558 n. 1 (5th Cir. 2008). In *Gomez-Herrera*, the court stated that any disparity resulting from fast-track programs is not unwarranted, but instead intended by Congress within the meaning of Section 3553(a)(6). *Gomez-Herrera*, 523F.3d at 562.

The defendant also argues that this court imposed a substantively unreasonable sentence by double counting his prior conviction to assess criminal history points and offense level points for the same conviction. He also asserts that the sentence is "greater than necessary to effectuate Section 3553(a)'s purposes . . . ." The defendant cites several district court cases in which the enhancement under U.S.S.G. § 2L1.2 was mitigated by imposition of a below guidelines sentence.

The defendant has, however, failed to demonstrate any unauthorized double counting. The guidelines permit double counting and only where the guidelines expressly exclude it is double counting prohibited. The use of a prior conviction as a sentencing enhancement under §2L1.2(b)(1)(D) to enhance a defendant's offense level does not preclude the use of that same conviction to determine a defendant's criminal history category. As noted by the government, the two are entirely different calculations. The Fifth Circuit has stated that double counting is allowed "where a single act is relevant to two dimensions of the Guideline analysis. *United States v. Franklin*, 148 F.3d 451, 461–62 (5th Cir.1998). The offense level represents the "wrongfulness of the act "and the criminal history category estimates the "likelihood of recidivism." *United States v.*

*Dadi*, 235F.3d 945, 956 n. 10 (5th Cir. 2000). The guidelines do not prohibit the use of a prior conviction to determine an offense level and at the same time to consider it for purposes of criminal history calculation.

The defendant's claims that U.S.S.G. § 2L1.2 should not have been applied because it is not based on empirical data and results in double counting were rejected in *United States v. Duarte*, 569 F.3d 528, 529 –30 (5th Cir. 2009). Davila-Martinez's argument also fails as his sentence was not dependent upon his guideline range. This court observed that the defendant's criminal history category underrepresented the seriousness of his criminal history and, citing numerous factors, including the offenses for which defendant has been convicted and defendant's dereliction of care for some of his children and the defendant's repeated entry into the United States without approval after having been deported, stated that all these factors indicate that this defendant's criminal history category underrepresented his criminal history. U.S.S.G. § 4A1.3 .The Fifth Circuit found that the reasons given supported the upward departure.

Accordingly, for the reasons set forth herein above, the defendant's §2255 motion will be denied.

Lake Charles, Louisiana, this 2 day of May, 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE